UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:21-CR-7 JD |
| FRANK STORK | |

**OPINION AND ORDER**

Defendant Frank Stork has filed several objections (DE 110) to the Presentence Investigation Report ("PSR"). (DE 109.) The Court now overrules these objections, finding that the disputed paragraphs in the PSR are supported by a preponderance of the evidence. Accordingly, the Court also finds the six-level enhancement under U.S.S.G. § 3A1.2 is warranted.

**A.   Factual Background**

The Court recounts the undisputed factual contentions in the PSR. On January 3, 2021, Mr. Stork was arrested in the parking lot of a Days Inn in Hobart, Indiana. Mr. Stork was driving a black Dodge Durango, and when Hobart Police Department Officers Havens and Shaginaw observed him fail to signal, they alerted their lights and began a traffic stop. Mr. Stork came to a stop in the Days Inn parking lot and put his hands on the steering wheel as instructed. Officers suspected Mr. Stork had a substance in his mouth and ordered him to spit it out. A physical altercation between Officers Havens, Officer Shaginaw, and Mr. Stork occurred. Mr. Stork was ultimately removed from the vehicle and arrested. During the course of the arrest, Mr. Stork was tased twice and bitten by a K-9, and Officers Havens and Shaginaw called for backup. Mr. Stork

was eventually handcuffed after several minutes. Mr. Stork is large, approximately 6'5" and 200 pounds.

On May 6, 2022, Mr. Stork pled guilty to one count of Felon in possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). Subsequent to pleading guilty, Mr. Stork objected to paragraphs 16 and 17 of the final PSR. An evidentiary hearing was held on April 20, 2023, and both Mr. Stork and the Government presented evidence.

### B. Objections to the PSR

"Generally, facts considered at sentencing must be proved by a preponderance of the evidence." *United States v. Major*, 33 F.4th 370, 379 (7th Cir. 2022) (quoting *United States v. Lucas*, 670 F.3d 784, 792 (7th Cir. 2012)). The evidence considered at sentencing must be "reliable," not just "speculation or unfounded allegations." *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009). "Evidence will satisfy this requirement if it bears sufficient indicia of reliability to support its probable accuracy." *Lucas*, 670 F.3d at 792. "Sentencing courts may also draw inferences and conclusions based on testimony given and evidence introduced at a sentencing hearing." *Major*, 33 F.4th at 379. "The rules of evidence do not apply during sentencing proceedings; the only requirement is that the evidence supporting the sentence must be reliable." *United States v. Cooper*, 591 F.3d 582, 591 (7th Cir. 2010).

#### *(1) Objection to Paragraph 16*

Mr. Stork objects to paragraph 16 of the PSR, which provides a two-level enhancement if the firearm was stolen. Mr. Stork argues "that because Stork had no way of knowing that the firearm he possessed was stolen, that he should not bear the full brunt of the guidelines imposing

a two (2) level enhancement." At the evidentiary hearing, Mr. Stork conceded this argument is more properly addressed under the 3553(a) factors. Accordingly, the Court overrules the objection to paragraph 16, adopts paragraph 16 as its own findings, and will consider this argument in favor of mitigation at the second portion of Mr. Stork's sentencing hearing. *See United States v. Dillon*, No. 22-1503, 2023 WL 2009928, at *2 (7th Cir. Feb. 15, 2023) (affirming district judge's consideration of defendant's knowledge of stolen weapon under 3553(a)).

### *(2) Objection to Paragraph 17*

Mr. Stork objects to paragraph 17's imposition of a six-level adjustment pursuant to U.S.S.G. § 3A1.2(c)(1). Section 3A1.2(c)(1) provides in relevant part, "If, in a manner creating a substantial risk of serious bodily injury, the defendant… knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom… increase by 6 levels." Application Note 4(B) further provides that "substantial risk of serious bodily injury includes any more serious injury that was risked, as well as actual serious bodily injury (or more serious injury) if it occurs." Mr. Stork argues the adjustment does not apply because the PSR's description of the factual circumstances of the arrest are inaccurate. (DE 129 at 7.) As evidence, Mr. Stork presents a video of the encounter, taken at some distance, which he argues contradicts the officer's version of events and evidences the fact that the officers used unreasonable force against him. Mr. Stork also testified to his version of events.

As an initial point, the Court addresses the arrest video. Mr. Stork presented the video of the incident at length during the hearing, both zoomed in and in its original format. The video

appears to be security footage from a nearby business, and it is taken from some distance. The Court reviewed the video multiple times, but the quality of the video is so poor that it cannot be said to contradict or support either side's version of events to a meaningful degree. Though Mr. Stork's objection requires second-by-second parsing of the video (DE 129 at 8), it is simply impossible to tell what occurred during the arrest from the video because the subjects are extremely blurry and often obscured by vehicles. The Court found concerning Mr. Stork's propensity to take significant liberties with the phrase "the video shows," frequently using this phrase to corroborate his testimony where the video was indecipherable.

Accordingly, the Court's factual conclusions are not based on the video in evidence, and the Court's determination of what happened relies in great part on oral testimony presented at the evidentiary hearing. At the hearing, Officers Havens, Officer Shaginaw, and Mr. Stork testified; the officers and Mr. Stork presented competing, incompatible version of the day's events. The Court simply finds the version of events supplied by Officers Havens and Shaginaw more credible and adopts findings consistent with their testimony.

Officer Havens testified that he pulled Mr. Stork over in the parking lot of a hotel. He testified that he observed Mr. Stork making sudden, furtive reaching movements to the back of the passenger side of the vehicle, where a gun was later located. Officer Havens became concerned Mr. Stork was concealing something and exited his vehicle with his duty weapon drawn. Officer Havens testified he and Officer Shaginaw approached the vehicle from opposite sides and observed a white substance coming from the corners of Mr. Stork's mouth. He was ordered to spit it out, and did not, so the officers opened both car doors. Mr. Stork complied with an order to put his hands on the steering wheel but did not comply with an order to exit the vehicle and refused to spit out the white substance. Mr. Stork held on to the wheel and began

4

saying no, at which point Officer Shaginaw entered the passenger side of the vehicle and Mr. Stork and Officer Shaginaw began to tussle. Mr. Stork pushed Officer Shaginaw, and Officer Shaginaw announced he would be tased. Officer Shaginaw deployed the taser, but it did not disable Mr. Stork. Officer Havens then executed a gable grip, grabbing Mr. Stork around his right shoulder, and pulled him out of the vehicle. From there, a physical altercation between Mr. Stork and Officer Havens ensued, in which Mr. Stork kicked and squirmed away from Officer Havens, causing some pain. Mr. Stork was tased again, but it was ineffective. Both officers were now engaged in trying to subdue Mr. Stork, with Officer Havens taking the legs and Officer Shaginaw taking the torso. Officer Shaginaw then ordered Officer Havens to deploy a K-9, who was then deployed and bit Mr. Stork on the leg. Mr. Stork's pants came down, and a white chalky substance was emitted from his anal cavity; Officer Havens became concerned this would cause an accidental overdose for the K-9. The struggle continued, and Officer Shaginaw was able to get one arm in handcuffs. Two other officers arrived, and 10–30 seconds later, Mr. Stork was handcuffed. Officer Havens was not hospitalized with any injuries.

　　Officer Shaginaw's testimony was mostly consistent with that of Officer Havens.  He also testified that Mr. Stork continued to reach to the back of the passenger compartment even after Officer Havens and Officer Shaginaw yelled to show his hands. He further added that Mr. Stork was foaming at the mouth and "feverishly" chewing on the substance at a quick pace. He also described the scuffle between Officer Havens and Mr. Stork: "Mr. Stork is laying on his back kind of in an upside-down turtle position, and he's kicking at Officer Havens." Draft transcript, 62:4–7. Once Mr. Stork was out of the car and after the second taser deployment, Mr. Stork fought Officer Shaginaw and Officer Havens by kicking, flailing, punching, and pushing on Officer Shaginaw's gun. One of those punches landed, causing some pain, and dislodging a

5

lapel microphone located under Officer Shaginaw's chin. The tussle also broke the taser wires, so when Officer Shaginaw attempted to tase Mr. Stork a third time, he actually tased himself. Officer Shaginaw described the struggle as the hardest he had in his 22 years as a law enforcement officer, perhaps in part because of the significant disparity in size between Mr. Stork and the officers. Officer Shaginaw reported scrapes but did not have to go to the hospital.

In stark contrast, Mr. Stork testified that he had nothing in his mouth and the officers immediately began fighting him without warning and for no reason. He testified the officers told him to put his hands on the steering wheel, which he complied with, and then the officers opened his car door, and accused him of having something in his mouth. At this point, Mr. Stork testified Officer Havens immediately and repeatedly punched him in the left eye, knocking him briefly unconscious, and began choking him. He was then tased without warning. Mr. Stork testified that he was removed from the vehicle, fell face down, and was again repeatedly punched by Mr. Havens. Mr. Stork testified he did not fight back and just laid face down when he was again tased. He was then fully handcuffed on both wrists, at which point the officers deployed the dog, and the dog bit him. He then testified that other officers called to the scene kicked him.

Mr. Stork's medical records from after the incident reflect a presumptive positive for cocaine. A gun was later recovered in the area behind the passenger seat of Mr. Stork's vehicle. Mr. Stork sustained a swollen eye during the encounter, and the officers called for medical care to assist him with that injury and the dog bite.

In light of the evidence presented, the Court does not find Mr. Stork's testimony credible and accords it little weight. Based on Mr. Stork's manner of testifying, the reasonableness of his testimony, and his testimony's consistency with other evidence in the record, the Court does not find Mr. Stork credible. Specifically, Mr. Stork's objection relied heavily on the second-by-

second parsing of a video that does not show what Mr. Stork alleges, undermining his character for truthfulness. Further, Mr. Stork's testimony is contrary to the officer's credible accounts, which largely corroborate each other and are confirmed in part by both the positive drug test and the recovery of a gun in Mr. Stork's vehicle. *See United States v. Taylor*, 72 F.3d 533, 543 (7th Cir. 1995) (finding that PSR bore "sufficient indicia of reliability" where "individuals who provided this information gave largely consistent and mutually-corroborating accounts"). Mr. Stork's testimony at the evidentiary hearing was inconsistent with some of his prior statements, leading the Court to believe his account may not be entirely truthful. For example, while he previously alleged the gun was planted on him, at the evidentiary hearing, he admitted knowledge of the gun. Mr. Stork also previously alleged the police "planted drugs in his butt;" (PSR ¶ 7) he later merely denied that he was on drugs at the time. The Court further considers that Mr. Stork refused to admit or acknowledge easily verifiable information when testifying, such as the existence of a probable cause affidavit for his 2007 arrest, his original statements to officers about his arrest, and the unsuccessful nature of a prior civil lawsuit he filed. This does not lead the Court to believe Mr. Stork is telling the truth about other, less easily verified events. And further, Mr. Stork's insistence that the video evidence corroborated his testimony where it was evident to all present that the video was unclear does not bode well for his truthfulness. The Court also notes Mr. Stork has a prior conviction for resisting arrest, which makes it somewhat more likely that he resisted arrest on this date. In summation, the Court specifically finds by a preponderance of the evidence that Mr. Stork wrestled with, punched at, kicked, and pushed officers, that this struggle went on for several minutes, that Mr. Stork reached for a gun at least once, and that this struggle resulted in his being tased twice, being bitten by a K-9, and ultimately being arrested by several officers. The Court also rejects Mr. Stork's argument that his

actions were justified in self-defense because the Court does not find the officers used unreasonable force under the circumstances. *See Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011) (finding forcible removal from vehicle, pepper spray, and baton strikes reasonable when man refused to comply, fought at length, and resisted arrest). Therefore, self-defense is unavailable. *See generally Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999) (party asserting self-defense must act without fault).

The Court concludes the resistance and struggle described constitute substantial risk of serious injury under this circuit's precedent. Determining the level of injury risked is a fact-intensive inquiry, and the Court' must weigh a myriad of factors. *United States v. Alexander*, 712 F.3d 977, 978 (7th Cir. 2013) Section 3A1.2 applies to serious injury that was risked, as well as actual serious bodily injury. *Id*. The Court notes of particular importance that Mr. Stork punched, kicked, and wrestled with officers on icy conditions and with such force that he was tased multiple times, a K-9 was employed, and other officers were required to handcuff him. As well, Officer Shaginaw testified that he had previously suffered a "TBI" (Traumatic Brain Injury), which made him particularly susceptible to further injury. The Court further notes that both officers describe Mr. Stork reaching toward the back passenger side of the car, where a gun was recovered, and one officer testified that Mr. Stork repeatedly pushed on his gun, perhaps in an effort to obtain the weapon. The Seventh Circuit has upheld applications of the enhancement in similar scenarios, "where a suspect wielded no dangerous weapon and where no serious injury was actually inflicted." *United States v. Irving*, 431 F. App'x 513, at *516 (7th Cir. 2011) (affirming enhancement where defendant wrestled and bit officers on icy terrain and a taser, baton, and pepper spray was required to subdue him); *see also Alexander*, 712 F.3d at 978 (upholding enhancement where defendant punched officer twice, wrestled the officer, and fled

8

before being subdued by a police dog). Other circuits also agree tussles of this nature qualify for application of the enhancement. See *United States v. Ashley*, 141 F.3d 63, 69 (2d Cir. 1998) (upholding enhancement where an unarmed defendant kicked, swung, and fought with such ferocity that it took multiple officers several minutes to subdue him); *United States v. Hampton*, 628 F.3d 654, 662 (4th Cir. 2010) (application appropriate where defendant shoved, struggled with, and attempted to grab the gun of an officer, requiring him to be tased twice). Thus, the Court finds the combination of Mr. Stork's extreme physical resistance, the dangerous conditions, and the effort required to subdue Mr. Stork support that the officers incurred a substantial risk of severe injury in the course of arresting Mr. Stork, and application of the enhancement under § 3A1.2 is appropriate.

### C. Conclusion

For the reasons stated above, the Court finds the statements in the PSR are based on sufficiently reliable information and therefore OVERRULES Mr. Stork's objections to the PSR and ADOPTS paragraphs 16 and 17 of the PSR for the purposes of sentencing.

SO ORDERED.

ENTERED: May 12, 2023

                                                    /s/ JON E. DEGUILIO
                                                  Chief Judge
                                                  United States District Court